Affirmed in Part, Reversed and Remanded in Part and Opinion filed August
21, 2008








 

Affirmed
in Part, Reversed and Remanded in Part and Opinion filed August 21, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00057-CV

____________

 

CA PARTNERS, Appellant

 

V.

 

MARSHALL SPEARS AND CITIFINANCIAL,
INC.,
Appellees

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 06-CV-0457

 



 

O P I N I O N

Appellant CA Partners sued appellees Marshall Spears and
Citifinancial, Inc., seeking reformation of a deed of trust and judicial
foreclosure of real property owned by Spears and subject to a security interest
held by Citifinancial.  Spears counterclaimed, asserting causes of action for,
among other things, violation of the Deceptive Trade Practices Act, the Fair
Debt Collection Practices Act, and the Texas Finance Code. Citifinancial also
counterclaimed, seeking a declaratory judgment that its lien was superior to
any held by CA Partners on Spears=s real property. 
After a bench trial, the trial court granted relief to Spears and Citifinancial
on their counterclaims.  CA Partners then brought this appeal.








Factual
and Procedural Background

In December 1989, Spears contracted with Lyle Construction
Company to remodel his home, located at 7314 Nightingale in Texas City.  Spears
financed the remodeling work through Goldome Credit Corporation, and executed a
promissory note (Athe Note@) and a deed of
trust (Athe Deed@), granting Lyle
Construction Co. a lien on his real property.  The Deed described Spears=s real property as
follows:

Lto [sic] 84, Block 4, SOUTH ACRE
MANOR, SECTION 3, an Addition in Galveston County, Texasm [sic] according to
the map or plat thereof recorded in Volume 1616, Page 106, recorded in the
Office of the County Clerk of Galveston County, Texas.

However,
Spears=s home was
actually located on Lot 85; Spears did not own Lot 84.

The terms of the Note required Spears to make payments in
120 monthly installments, the first of which was due on February 1, 1990.  The
Deed further provided that A[s]aid Note is payable to [Lyle
Construction Co.] in 120 equal successive monthly installments of $217.25 each,
except the final installment, which shall be the balance then due on the Note.@  Spears
eventually defaulted on the Note, but the Note was never accelerated.








In August 2005, the Note and the Deed were assigned to CA
Partners, a sole proprietorship of which Randall B. Johnson is Amanaging partner@ and sole owner. 
CA Partners sent two notices of default and demands for payment to Spears: one
in September 2005, in the amount of $14,760.05, and the second in October 2005,
in the amount of $15,013.04.[1] 
The second notice was accompanied by a ANOTICE OF
FORECLOSURE SALE WITH NOTICE OF DESIGNATION OF SUBSTITUTE FORECLOSURE TRUSTEE,@ which provided,
among other things, that Johnson was designated as substitute trustee to
foreclose CA Partners=s lien on the property described in the
Deed, and that a foreclosure sale would be held in the lobby of the Galveston
County Courthouse on November 1, 2005.

CA Partners was the sole, and therefore winning, bidder at
the foreclosure sale.  Johnson, acting in his capacity as substitute trustee,
executed a ASUBSTITUTE TRUSTEE DEED@ (Athe Trustee Deed@), which purported
to convey Spears=s interest in the real property located at
7314 Nightingale, together with Aall right, title,
and interest of [Spears], if any, in and to any personal property located
thereon,@ to CA Partners.

CA Partners then sent a ANotice Terminating
Right of Occupancy@ to Spears, notifying him that he had
thirty days from the date of receipt to vacate the premises located at 7314
Nightingale.  When Spears failed to do so, CA Partners sued to evict Spears
from the property.[2] 
On appeal from the eviction, Spears notified the court that the Deed contained
an incorrect property description, and the court dismissed the eviction
action.  CA Partners then filed this suit against Spears and Citifinancial,[3]
seeking reformation of the Deed and judicial foreclosure of Spears=s real property.








Spears counterclaimed, alleging tortious interference with
contract, slander of title, and violations of the Deceptive Trade Practices
Act, the Fair Debt Collection Practices Act, and the Texas Finance Code. 
Spears also sought a declaratory judgment that the Deed did not provide a lien
on his personal property, and that the debt and lien were barred by the statute
of limitations.

Spears filed a motion for partial summary judgment, arguing
that the statute of limitations had run on both collection of the Note and
reformation of the Deed.  Spears asserted that his last payment on the Note was
dueCand therefore
limitations began to runCon January 1, 2000.  Because CA Partners
did not file suit  until April 28, 2006, Spears argued that all of CA Partners=s causes of action
were barred by the applicable four- and six-year statutes of limitations.[4]

CA Partners responded, arguing that the statute of
limitations had not run on the debt, in part because Spears had continued to
make payments on the Note until May 2004.  CA Partners submitted an affidavit
sworn to by Johnson to substantiate its assertion.

Spears objected to Johnson=s affidavit,
arguing (1) the entirety of the affidavit is hearsay within hearsay, not
falling within any of the exceptions to the hearsay rule, (2) the affidavit
contains no supporting records, and (3) it is conclusory.  The trial court
sustained Spears=s objections, struck Johnson=s affidavit, and
then refused CA Partners=s request under Rule 166a(f) of the Texas
Rules of Civil Procedure to supplement Johnson=s affidavit with
supporting records.  Ultimately, the trial court granted Spears=s motion for
partial summary judgment.








The parties then tried their remaining claims to the
bench.  On the second day of trial, Citifinancial filed a motion for leave to
file a counterclaim, which the trial court granted over CA Partners=s objection. 
Citifinancial then counterclaimed, seeking a declaratory judgment that its lien
Aholds a priority
position over any lien on the property held by Plaintiff CA Partners . . . .@  That same day,
Spears requested a trial amendment on his counterclaim naming the
counterdefendant as ACA Partners and Randall Johnson doing
business as CA Partners.@  The trial court granted  Spears=s request for a
trial amendment, again over CA Partners=s objection.

The trial court ultimately granted relief to Spears and
Citifinancial on their counterclaims.  It entered judgment against Johnson,
individually and doing business as CA Partners, for violating the DTPA, the
Fair Debt Collection Practices Act, and the Texas Finance Code, and awarded
Spears $2,500 in actual damages, $25,000 in mental anguish damages, and $55,000
in additional damages for a Aknowing@ violation of the
DTPA.  The trial court also awarded Spears $1,000 in additional damages under
section 1692k(a)(2)(A) of the Fair Debt Collection Practices Act.

In addition, the trial court granted Spears a declaratory
judgment against Johnson, individually and doing business as CA Partners, that
(1) the Deed did not create a lien on Spears=s personal
property; and (2) Johnson has no lien on Spears=s real property. 
The trial court also granted Citifinancial a declaratory judgment against
Johnson, individually and doing business as CA Partners, that (1) Johnson has
no lien on Spears=s real property; and (2) Citifinancial=s lien is superior
to any other lien on Spears=s property. 

The trial court further ordered that Johnson be permanently
enjoined from (1) engaging in debt collection until he posts a surety bond with
the Secretary of State in accordance with section 392.101 of the Texas Finance
Code; and (2) using the name CA Partners as an assumed name in debt collection
in the State of Texas.








Finally, the trial court entered a judgment against
Johnson, individually and doing business as CA Partners, for Spears=s and
Citifinancial=s attorney=s fees, awarding
attorney=s fees in the
amounts of $124,450 to Spears and $45,975 to Citifinancial, and for pre- and
post-judgment interest and costs.

CA Partners timely filed its notice of appeal.  It then
requested the trial court to file findings of fact and conclusions of law,
which the trial court ultimately did.[5]

Issues
on Appeal








In eight issues, CA Partners challenges various aspects of
the trial court=s judgment.[6] 
In its first and second issues, CA Partners contends that the trial court erred
in granting Spears=s motion for partial summary judgment.  In
its third issue, CA Partners argues that the trial court erred in refusing to
reform the Deed to state the correct lot number for Spears=s residence.  In
its fourth and sixth issues, CA Partners asserts that the trial court erred in
granting Spears=s counterclaims for violations of the
DTPA, the Fair Debt Collection Practices Act, and the Texas Finance Code.  In
its fifth issue, CA Partners argues that the trial court erred in awarding
judgment against Johnson individually, and in issuing permanent injunctions
against Johnson.  In its seventh issue, CA Partners asserts that the trial
court erred in awarding attorney=s fees to Spears
because he failed to segregate time incurred between fee-recoverable and
non-fee recoverable matters, and because the amount of appellate attorney=s fees awarded was
Aextravagant@ and excessive. 
In its final issue, CA Partners contends that the trial court erred in allowing
Citifinancial to file a counterclaim in the middle of trial.

We agree only with CA Partners=s seventh issue,
that Spears was required to segregate attorney=s fees.  Because
the trial court=s award of attorney=s fees to Spears
was based upon evidence of unsegregated fees, we reverse that portion of the
trial court=s judgment awarding attorney=s fees to Spears,
sever that portion of the judgment, and remand the cause to the trial court for
a new trial on Spears=s recoverable attorney=s fees.  We
overrule the remainder of CA Partners=s issues and
affirm the trial court=s judgment in all other respects.

Analysis
of CA Partners=s Issues

I.        The
Trial Court Did Not Err in Granting Spears=s Motion for
Partial Summary Judgment and in Refusing to Reform the Deed.

In its first and second issues, CA Partners contends that
the trial court erred in granting Spears=s motion for
partial summary judgment because (1) the trial court improperly struck Johnson=s affidavit and
refused to grant leave to amend the affidavit, and the affidavit created a fact
issue on limitations; (2) the maturity date of the last installment on the Note
did not trigger the running of the statute of limitations; and (3) the evidence
proved that Spears=s last payment on the Note was made within
the limitations period and the Note was accelerated within the limitations
period.  In its third issue, CA Partners contends that the trial court erred in
refusing to reform the Deed, because a limitations barCif it appliesConly destroys the
remedy, and not the underlying debt.  We consider each of appellant=s arguments in
turn.

A.      The Trial
Court Did Not Err in Striking Johnson=s Affidavit and
Refusing to Grant Leave to Amend the Affidavit.








CA Partners first argues that the trial court erred in
striking Johnson=s affidavit as  being conclusory and
containing hearsay, and in refusing to grant leave to amend the affidavit.  CA
Partners asserts that Spears=s objections to Johnson=s affidavit were
unfounded because (1) the statement Athe last payment
on the Note at issue from Marshall Spears was for $111.50, received in May 2004@ is a statement of
fact, and therefore not conclusory; and (2) the affidavit is a business records
affidavit, admissible under Rule 803(6) of the Texas Rules of Evidence, and
thus is not objectionable on hearsay grounds.  CA Partners finally asserts that,
under Rule 166a(f) of the Texas Rules of Civil Procedure,  the trial court
should have granted leave to amend Johnson=s affidavit with
the payment documents from 2003B2004, citing us to our holding in Martin
v. Durden, 965 S.W.2d 562, 565 (Tex. App.CHouston [14th
Dist.] 1997, pet. denied).

Because we agree with Spears that Johnson=s affidavit is
conclusory, we conclude that the trial court did not err in striking or in
refusing to grant leave to amend the affidavit.  Therefore, as we explain
below, we overrule CA Partners=s first issue.

1.       Standard
of Review and Applicable Law

We review a trial court=s decision to
strike an affidavit submitted in response to a motion for summary judgment for
an abuse of discretion. See Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998) (stating that evidentiary rulings are committed to
the trial court=s sound discretion).  A trial court abuses
its discretion when it acts in an arbitrary or unreasonable manner without
reference to any guiding rules or principles. See Walker v. Gutierrez,
111 S.W.3d 56, 62 (Tex. 2003).  A trial court also abuses its discretion when
it fails to analyze or apply the law correctly. In re Sw. Bell Tel. Co.,
L.P., 226 S.W.3d 400, 403 (Tex. 2007).








In a motion for summary judgment, supporting and opposing
affidavits must be made on personal knowledge, must set forth such facts as
would be admissible in evidence, and must show affirmatively that the affiant
is competent to testify to the matters stated therein. Tex. R. Civ. P. 166a(f); Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 122 (Tex. 1996).  Conclusory statements in an affidavit
unsupported by facts are insufficient to defeat summary judgment. 1001
McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital, 192 S.W.3d
20, 27 (Tex. App.CHouston [14th Dist.] 2005, pet. denied)
(citing Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997); see
Ryland Group, Inc., 924 S.W.2d at 122 (stating that conclusory affidavits
are insufficient to raise fact issues that will preclude summary judgment).  A
conclusory statement is one that does not provide the underlying facts to
support the conclusion. 1001 McKinney Ltd., 192 S.W.3d at 27; see Earle
v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999) (stating that a witness=s affidavit is
conclusory if it fails to explain the basis of the witness=s statements to
link his conclusions to the facts).

Furthermore, challenges to summary judgment affidavits as
conclusory allege a defect in substance rather than form. See Tex. R. Civ. P. 166a(f); EOG Res.,
Inc. v. Killam Oil Co., 239 S.W.3d 293, 302 (Tex. App.CSan Antonio 2007,
pet. denied).  If a defect in a summary judgment affidavit is one of substance,
the trial court is not required to provide an opportunity to amend. See Tex. R. Civ. P. 166a(f); EOG Res.,
Inc., 239 S.W.2d at 302 (citing Clendennen v. Williams, 896 S.W.2d
257, 260 (Tex. App.CTexarkana 1995, no writ)).

2.       Application
of Law to the Facts

Here, we cannot conclude that the trial court abused its
discretion in sustaining Spears=s objection that Johnson=s affidavit is
conclusory.  We begin by reviewing Johnson=s affidavit, in
its entirety:

I am Randall Johnson.  I am Managing Partner of CA
Partners.  I am over the age of eighteen (18) years and have never been
convicted of a felony.  I am fully authorized to make this affidavit.  The
facts stated herein are within my personal knowledge and are true and correct.








I have reviewed
[CA Partners=s] Response to [Spears=s] Motion for
Summary Judgment.  I hereby certify in my official capacity as Managing Partner
of CA Partners, that the last payment on the Note at issue received from
Marshall Spears was for $111.50, received in May 2004.  In deducing this amount and date of
payment, I have consulted records which were made and kept in the course of a
regularly conducted business activity.  It was the regular practice of the
business activity to make such records.  The records were made at or near the
time of the event that it records.  The records were made by, or from
information transmitted by, a person with knowledge acting in the regular
course of business.

It is
immediately apparent that Johnson did not state any facts upon which he based
his conclusion that Spears=s last payment on the Note was for $111.50 and received in
May 2004.  Nowhere does Johnson provide readily controvertible facts personally
known to him, much less link his conclusion to these facts.  He does not identify
the company where payments were made, how he knew that the records were kept in
the regular course of business, or which company kept the records in the
regular course of business.  Most notably, he does not aver that the records
were kept in the regular course of business by CA Partners or a predecessor
owner.  For these reasons, Johnson=s affidavit is
conclusory, and the trial court did not abuse its discretion in striking the
affidavit. See Earle, 998 S.W.2d at 890.

Moreover, because Johnson=s affidavit is
conclusoryCwhich is a defect in substanceCthe trial court
was not required to provide CA Partners an opportunity to amend the affidavit.
See Tex. R. Civ. P. 166a(f); EOG
Res., Inc., 239 S.W.2d at 302; Clendennen v. Williams, 896 S.W.2d at
260.  We therefore overrule CA Partners=s first issue.

B.      The Trial
Court Correctly Ruled that Limitations Barred CA Partners=s Claims.








CA Partners next contends that the trial court erred in
granting Spears=s motion for partial summary judgment
because (1) the maturity date of the last installment on the Note did not
trigger the running of the statute of limitations; and (2) the evidence proved
that Spears=s last payment on the Note was made within the
limitations period and the Note was accelerated within the limitations period.[7] 
CA Partners asserts that Spears made payments on the Note until May 2004.  CA
Partners also claims that limitations did not begin to run on the maturity date
of the last installmentCJanuary 1, 2000Cbecause its
predecessor-in-interest never accelerated the maturity of the Note.  CA
Partners argues that, under the holding of the Texas Supreme Court in Holy
Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566B67 (Tex. 2001),
its cause of action did not accrueCand therefore
limitations did not begin to runCuntil it actually
accelerated the maturity of the Note and demanded payment in September 2005.

Spears asserts that the statute of limitations had run on
the debt because the date of maturity triggered the running of the statute of
limitations, and CA Partners did not file suit until after the limitations
period had expired.  Spears further asserts that none of the payments allegedly
made reaffirmed the debt, and that if CA Partners wanted to contend that any of
his payments constituted a reaffirmation agreement, then it should have sued on
the reaffirmation and not the original debt.

1.       Standard
of Review

We review the trial court=s grant of summary
judgment de novo. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150,
156B57 (Tex. 2004). 
To prevail on a traditional motion for summary judgment, the movant must show
that there is no genuine issue as to any material fact and that it is entitled
to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985); Aguirre v. Vasquez, 225 S.W.3d 744, 750 (Tex. App.CHouston [14th
Dist] 2007, no pet.).  We take as true all evidence favorable to the
non-movant, and we indulge every reasonable inference and resolve any doubts in
the non-movant=s favor. Joe, 145 S.W.3d at 157; Aguirre,
225 S.W.3d at 750.  








A defendant seeking summary judgment on the basis of
limitations must conclusively establish that defense. Tex. R. Civ. P. 166a; Holy Cross Church of God in
Christ, 44 S.W.3d at 566.  In this situation, the defendant/movant must
prove when the cause of action accrued. See Holy Cross Church of God
in Christ, 44 S.W.3d at 566; KPMG Peat Marwick v. Harrison County
Housing Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  If the movant
establishes that the statute of limitations bars the action, the nonmovant must
then adduce summary judgment proof raising a fact issue in avoidance of the
statute of limitations. KPMG Peat Marwick, 988 S.W.2d at 748.

2.       Accrual
and Limitations

By statute, if a note payable in installments is secured by
a lien on real property, limitations does not begin to run until the maturity
date of the last installment. Tex. Civ.
Prac. & Rem. Code _ 16.035(e); see Holy Cross
Church of God in Christ, 44 S.W.3d at 566.  Section 16.035 modifies the
general rule that a claim accrues and limitations begins to run on each
installment when it becomes due. Holy Cross Church of God in Christ,
44 S.W.3d at 566. 

If a note or a deed of trust secured by real property
contains an optional acceleration clause, default does not start limitations
running on the note. Id.  Rather, the action accrues only when the
holder actually exercises its option to accelerate. Id.  However, the
holder of a note may only Aaccelerate@ the maturity date
of the note if its last installment is not yet due. See Black=s Law Dictionary 12 (8th ed. 2004)
(defining acceleration as A[t]he advancing of a loan agreement=s maturity date@).  Once the
maturity date of the last installment has passed, the holder may not Aaccelerate@ the note. 
Rather, the holder=s cause of action accruesCand therefore
limitations begins to runCon the maturity date of the final
installment. Tex. Civ. Prac. & Rem.
Code _ 16.035(e).[8]








Under Texas law, a suit for foreclosure of a real-property
lien or a sale of real property under a power of sale in a deed of trust that
creates a real-property lien must be made not later than four years after the
day the cause of action accrues. Tex.
Civ. Prac. & Rem. Code _ 16.035(a), (b); Holy Cross
Church of God in Christ, 44 S.W.3d at 567.  When this four-year period
expires, the real-property lien and the power of sale to enforce the lien
become void. Tex. Civ. Prac. & Rem.
Code _ 16.035(d).  However, this four-year limitations period can
be suspended by filing a written agreement in the county clerk=s office where the
real property is located. Id. _ 16.036.

3.       Application
of Law to the Facts

CA Partners=s argumentCthat its cause of
action accrued when it actually Aaccelerated@ the maturity of
the Note and demanded payment in September 2005Cis premised on the
belief that the Note did not mature on a date certain.  That is without merit. 
The maturity date is the date upon which the final installment is due. See Tex. Civ. Prac. & Rem. Code _ 16.035(e)
(stating that, if a note payable in installments is secured by a real property
lien, the four-year limitations period begins to run on the maturity date of
the last installment).  Here, the Note required Spears to make 120 successive
monthly installments of $217.25, beginning on February 1, 1990.  Thus, the Note
matured on January 1, 2000, the date upon which Spears=s final
installment was due. See id.; Holy Cross Church of Christ,
44 S.W.3d at 567; see also Smith v. Windstar Fin., Inc., No. 14-98-00589-CV,
1999 WL 740444, at *3 (Tex. App.CHouston [14th Dist.]
Sept. 23, 1999, no pet.) (not designated for publication) (concluding that
promissory note payable in installments matured on due date of final
installment).  And, pursuant to section 16.035(e), the four-year limitations
period began to run on that date. Tex.
Civ. Prac. & Rem. Code _ 16.035(e).








 Furthermore, any payments made by Spears after January 1,
2000 had no effect on the accrual of CA Partners=s cause of action. 
Essentially, CA Partners argues that the acceptance of payments by its
predecessor-in-interest after the date the final installment was due had the
effect of restoring the Note to its Aoriginal terms.@  By Aoriginal terms,@ CA Partners means
that the Note merely required Spears to make monthly payments on the Note so
long as the holder continued to accept them and until he made 120 total
payments or paid the remaining balance.  In other words, CA Partners would have
this Court construe the Note as having no fixed maturity date, or one that is
contingent upon the good will of the holder.  This conception of the Note=s terms ignores
the plain language of the Deed, which required Spears to make A120 equal successive
monthly installments of $217.25 each, except the final installment, which
shall be the balance then due on the Note.@[9]  The NoteCby its express
termsCmatured on the due
date of the final installment, which was January 1, 2000.

Moreover, the cases cited by CA Partners in its brief
involve notes whose maturity dates were accelerated, either by the holder of
the note, or by the occurrence of an express condition specified in the note. See
Holy Cross Church of God in Christ, 44 S.W.3d at 567 (holder
accelerated maturity date of note); San Antonio Real-Estate, Bldg. &
Loan Ass=n v. Stewart, 94 Tex. 441, 61
S.W. 386, 388 (1901) (borrower=s default on three installments had effect
of accelerating maturity date of note).  In fact, CA Partners=s argument makes
sense only in the context of acceleration.  Acceptance of late payments can
restore a note to its Aoriginal terms,@ i.e., restore the
note=s maturity date,
which, by statute, is the due date of the final installment. See Tex. Civ. Prac. & Rem. Code _ 16.035(e). 
However, here the parties concede that neither CA Partners nor its
predecessors-in-interest accelerated the maturity date of the Note.  The final
installment on the Note was already overdueCand therefore the
Note had maturedCby the time CA Partners acquired its
interest in the Note.  Thus, the four-year limitations period began to run
before CA Partners even acquired any interest in the Note.  Acceptance of late
payments by CA Partners=s predecessor-in-interest could not Arestore@ a maturity date
that had already passed.








Finally, any payments accepted by CA Partners=s
predecessors-in-interest after January 1, 2000 did not toll the running of
limitations.  Partial payment on a promissory note  neither interrupts the
running of limitations, nor constitutes an acknowledgment of the debt.
Gabriel v. Alhabbal, 618 S.W.2d 894, 897 (Tex. App.CHouston [1st
Dist.] 1981, writ ref=d n.r.e.).  And, even if CA Partners were
to claim that any of Spears=s payments constituted an acknowledgment
of the debtCwhich it does notCCA Partners would
have had to bring suit on the acknowledgment and not on the original debt in
order to avoid the limitations bar. See Eldridge v. Collard, 834 S.W.2d
87, 89 (Tex. App.CFort Worth 1992, no writ); Siegel v.
McGavock Drilling Co., 530 S.W.2d 894, 896 (Tex. Civ. App.CAmarillo 1975,
writ ref=d n.r.e.); see
also Sheffield Capital Corp. v. Konen, No. A14-94-00157-CV, 1995 WL 128250,
at *2 (Tex. App.CHouston [14th Dist.] Mar. 23, 1995, no
writ) (not designated for publication).

Therefore, the statute of limitations expired on CA
Partners=s claim for
foreclosure on January 1, 2004, but CA Partners did not file suit until April
2006.  The trial court did not err in granting Spears=s motion for
partial summary judgment on the basis of limitations.  We overrule CA Partners=s second issue.

C.      The Trial
Court Did Not Err in Refusing to Reform the Deed.








Finally, CA Partners contends that the trial court erred in
refusing to reform the Deed.  CA Partners asserts that Findings of Fact 38 and
39Cby which the trial
judge found that the Deed did not create a lien on Spears=s real property,
and that Johnson, individually and doing business as CA Partners, has no lien
on Spears=s real propertyCare both
incorrect.  CA Partners argues that this is a case of mutual mistake, and that
reformation of the Deed to state the correct lot number for Spears=s property is
warranted. See Long Bell Lumber Co. v. Lowry, 31 S.W.2d 345, 348 (Tex.
Civ. App.CAmarillo 1930, no writ) (ANot only are the
grantor and grantee entitled to a reformation of the instrument in case of
mutual mistake, but those acquiring the rights of the original parties are
entitled to such relief.@).  CA Partners further asserts that, even
if limitations has run on its foreclosure claim, the limitations bar only
affects the remedy, and does not destroy the debt. See Cent. Nat=l Bank v. Latham
& Co., 22 S.W.2d 765, 768 (Tex. Civ. App.CWaco 1929, writ
ref=d) (explaining
that a limitations bar affects the remedy only, and does not destroy the
debt).   According to CA Partners, a moral obligation to pay the debt would
survive, allowing it to seek judicial reformation of the Deed, notwithstanding
the running of limitations.

Spears contends that its lien and the power of sale to
enforce the lien are now void, because the limitations period expired before CA
Partners filed suit.  He asserts that the law does not require a futile act,
and argues that reformation of the Deed would be futile because CA Partners=s lien is void. 
We agree with Spears.

Even if we assume that the trial court erred in finding
that the Deed created no lien on Spears=s real propertyCa question we are
not required to decideCwe  would still conclude that the trial
court properly refused to reform the Deed.  CA Partners=s lien is void and
it has no power of sale to enforce the lien. See Tex. Civ. Prac. & Rem. Code _ 16.035(d). 
It would be an exercise in futility to reform a document creating a lien on
real property when the lien is void and no power of sale to enforce it
remains.  The law does not require a futile act. See City of Gladewater v.
Pike, 727 S.W.2d 514, 518 (Tex. 1987) (stating the equitable maxim that Aa court should not
require the doing of a useless thing@).








The cases cited by CA Partners do not support its position.
See Woodside Assurance, Inc. v. N.K. Res., Inc., 175 S.W.3d 421, 426
(Tex. App.CHouston [1st Dist.] 2005, no pet.); Latham, 22
S.W.2d at 768.  Section 16.035(b),[10]
Woodside Assurance, Inc., and Latham make it clear that, while
repayment of Spears=s debt may remain a moral obligation,
under the facts of this case there is no legal remedy for its enforcement. See
Tex. Civ. Prac.& Rem. Code _ 16.035(b); Woodside
Assurance, Inc., 175 S.W.3d at 426 (citing Machac v. Hajek, 437
S.W.2d 325, 328 (Tex. Civ. App.CCorpus Christi 1968, writ ref=d n.r.e.)); Latham,
22 S.W.2d at 767B68 (explaining the meaning of the terms Apledged property@ in the context of
the limitations bar).  We therefore overrule CA Partners=s third issue.

II.       The
Trial Court Did Not Err in Awarding Mental Anguish Damages to Spears, and in
Issuing Permanent Injunctions Against Johnson.

In its fourth and sixth issues, CA Partners contends that
the trial court erred in granting Spears=s counterclaims
for violations of the DTPA, the Fair Debt Collection Practices Act, and the
Texas Finance Code because (1) the evidence showed that any violation was
unintentional and the result of bona fide error; (2) there was no evidence or
insufficient evidence of a Aknowing@ violation to
support the award of additional damages under the DTPA; and (3) there was
insufficient evidence to support the award of mental anguish damages under the
DTPA.  In its fifth issue, CA Partners argues that the trial court erred in
awarding judgment against Johnson individually, and in issuing permanent
injunctions against Johnson.  We first examine CA Partners=s arguments
regarding Johnson=s individual liability, and then turn to
its remaining arguments.

A.      The Trial
Court Did Not Err in Awarding Judgment Against Johnson Individually.

CA Partners first argues that the trial court erred in
awarding judgment against Johnson individually because (1) there was no
pleading by Spears asking for a judgment individually; and (2) there was no
basis for the trial court granting Spears=s requested trial
amendment to add Johnson as a party over its objection.  CA Partners concedes
that it is a sole proprietorship, but nonetheless argues that A[t]here was simply
no basis for adding Johnson as a party to this action.@  We disagree.

 

 

 

 








1.       Spears
Complied With Texas Rule of Civil Procedure 28 by Requesting a Trial Amendment.         

Rule 28 of the Texas Rules of Civil Procedure governs suits
against individuals doing business under an assumed name.[11] 
Rule 28 expressly provides that (1) an individual doing business under an
assumed name may be sued in his assumed name for the purpose of enforcing
against him a substantive right; and (2) on the motion of any party or on the
court=s own motion, the
true name may be substituted. See Tex.
R. Civ. P. 28.  However, while Rule 28 requires that the correct legal
name be substituted, it does not mandate the procedural method by which
substitution may be accomplished. Sixth RMA Partners, L.P. v. Sibley,
111 S.W.3d 46, 53 (Tex. 2003).  The Texas Supreme Court has held that, for the
purposes of Rule 28, the correct legal name may be substituted by filing either
a motion requesting substitution, or a pleading that substitutes the correct
legal name for the assumed name. See id.  The party seeking to
substitute the party=s correct name must do so Aat some point
before judgment.@ See Chilkewitz v. Hyson, 22 S.W.3d
825, 829 (Tex. 1999); Sixth RMA Partners, 111 S.W.3d at 53. 








Whether Johnson used the name CA Partners as an assumed
name when collecting debts was a question of fact for the trial court. See
id.  In Finding of Fact 14, the court found that AC.A. Partners . .
. is an assumed name of Randall B. Johnson.@  In an appeal
following a bench trial, the trial court=s findings of fact
have the same weight as a jury verdict; we thus review the legal and factual
sufficiency of the evidence as we would following a verdict. Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  If there is more than a mere
scintilla of evidence supporting a finding of fact, we will overrule a legal
sufficiency challenge. Formosa Plastics Corp. USA v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  In reviewing a factual
sufficiency challenge, we consider all of the evidence and set aside a finding
only if it is so against the great weight and preponderance of the evidence as
to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996). 

At trial, Johnson testified that CA Partners is a sole
proprietorship, that he is its sole owner, and that he is in the business of
buying, selling, and collecting bad debt.  This evidence is legally and
factually sufficient to support the trial court=s finding that
Johnson used the name CA Partners as an assumed name when collecting debts. See
Formosa Plastics Corp., 960 S.W.2d at 48; Ortiz, 917 S.W.2d at 772. 
Thus, Spears could properly substitute the correct legal name by filing either
a motion requesting substitution, or a pleading substituting Johnson=s name for the
assumed name ACA Partners.@ See Tex. R. Civ. P. 28; Sixth RMA
Partners, 111 S.W.3d at 53.  Spears did so by requesting a trial amendment
to add Johnson in his individual capacity.

We next examine whether the trial court properly granted
Spears=s requested trial
amendment.

2.       The Trial
Court Properly Granted Spears=s Requested Trial
Amendment.








Rule 66 of the Texas Rules of Civil Procedure governs trial
amendments.  Rule 66 provides that, if during trial any defect, fault, or
omission in a pleading is called to the attention of the court, the court may
allow the pleadings to be amended, and shall do so freely when the presentation
of the merits of the action will be subserved thereby and the objecting party
fails to satisfy the court that the allowance of such amendment would prejudice
him in maintaining his action or defense upon the merits. Tex. R. Civ. P. 66.  A court may not
refuse a trial amendment unless (1) the opposing party presents evidence of
surprise or prejudice; or (2) the amendment asserts a new cause of action or
defense, and thus is prejudicial on its face. State Bar of Tex. v.
Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994).  The burden of showing
surprise or prejudice rests on the party resisting the amendment. Id.  If
the trial amendment is not mandatory, then the decision to permit the amendment
rests within the trial court=s sound discretion. Tex. R. Civ. P. 66; Kilpatrick,
674 S.W.2d at 658.  In such a case, the court=s decision to
allow the trial amendment may be reversed only if it is a clear abuse of
discretion. Kilpatrick, 674 S.W.2d at 658.

 Under Texas law, a sole proprietorship has no separate
legal existence apart from the sole proprietor. CU Lloyd=s of Tex., 126 S.W.3d at
684 (citing Ideal Lease Serv., Inc., 662 S.W.2d at 952).  The law treats
the sole proprietor and the sole proprietorship as one and the same person.[12]
See id.

In this case, the trial amendment requested by Spears was
mandatory.  As noted above, a trial amendment is mandatory if the opposing
party fails to present evidence of surprise or prejudice, and the amendment
does not assert a new cause of action or defense. See Kilpatrick, 874
S.W.2d at 658.  Although CA Partners objected when Spears requested the trial
amendment, CA Partners failed to present any evidence of surprise or
prejudice.  Furthermore, the proposed trial amendment did not assert a new
cause of action.  Rather, through his requested trial amendment, Spears merely
sought to substitute Johnson=s true name for his assumed name, as
Spears was required to do under Rule 28.

Thus, the trial court did not err in granting Spears=s requested trial
amendment and awarding judgment against Johnson individually.  We overrule CA
Partners=s fifth issue.

B.      The Trial
Court Did Not Err in Finding that CA Partners=sViolations of the
Fair Debt Collection Practices Act and the Texas Finance Code Were Not the
Result of Bona Fide Error.








CA Partners next argues that the trial court erred in
granting Spears=s counterclaims for violations of the Fair
Debt Collection Practices Act and the Texas Finance Code because the evidence
showed that any violation was unintentional and the result of bona fide error. 
CA Partners argues that the evidence showed that CA Partners never seized any
of Spears=s personal property, and that the Trustee=s DeedCwhich indicated
that seizure of Spears=s personal property might occurCwas the result of
bona fide error.  CA Partners contends that it is therefore entitled to the
bona fide error defense to alleged violations of the Fair Debt Collection
Practices Act and the Texas Finance Code.  We disagree.

1.       Applicable Law

Section 1692k of the Fair Debt Collection Practices Act and
section 392.401 of the Texas Finance Code provide a Abona fide error@ defense for debt
collectors accused of statutory violations. See 15 U.S.C. _ 1692k(c); Tex. Fin. Code _ 392.401.  Section
1692k provides,

A debt collector may not be held
liable in any action brought under this subchapter if the debt collector shows
by a preponderance of evidence that the violation was not intentional and
resulted from a bona fide error notwithstanding the maintenance of procedures
reasonably adapted to avoid any such error.

15
U.S.C. _ 1692k(c).  Similarly, section 392.401 states that A[a] person does
not violate this chapter if the action complained of resulted from a bona fide
error that occurred notwithstanding the use of reasonable procedures adopted to
avoid the error.@ Tex.
Fin. Code _ 392.401.  A Abona fide error@ is an error which
is made in the course of a good-faith attempt at compliance with statutory
requirements. Callaway v. East Tex. Gov=t Credit Union, 619 S.W.2d 411,
415 (Tex. Civ. App.CTyler 1981, writ ref=d n.r.e.). 
However, in order to utilize this defense, the debt collector must show that
reasonable procedures were used to prevent the error which caused the violation
in question. See Cent. Adjustment Bureau, Inc. v. Gonzales, 528 S.W.2d
314, 316 (Tex. Civ. App.CSan Antonio 1975, no writ) (interpreting
former version of state act); Johnson v. Riddle, 443 F.3d 723, 729 (10th
Cir. 2006) (interpreting federal act).  In the absence of such a showing, a
debt collector may not successfully assert the bona fide error defense under
either the state or the federal act. See Cent. Adjustment Bureau, Inc.,
528 S.W.2d at 316; Johnson, 443 F.3d at 729.

 








2.       Application
of Law to the Facts

The trial court found that, by representing in the Trustee=s Deed  that
nonpayment of the debt would result, and did result, in the sale of Spears=s personal
property, Johnson violated section 1692e(4) of the Fair Debt Collection
Practices Act[13]
and section 392.304(a)(8) of the Texas Finance Code.[14] 
CA Partners contends that the representation made in the Trustee=s Deed regarding
the sale of Spears=s personal property was the result of bona
fide error, thereby attempting to invoke the bona fide error defense.

However, the record contains no evidence that CA Partners
instituted reasonable procedures to prevent the error which caused the
violations of the Fair Debt Collection Practices Act and the Texas Finance
Code.  Without any proof that it instituted preventative procedures, CA
Partners is not entitled to the protection of the bona fide error defense under
either the state or federal acts.  The trial court did not err in finding that
Johnson=s violations were
not the result of bona fide error. See Cent. Adjustment Bureau, Inc.,
528 S.W.2d at 316; Johnson, 443 F.3d at 729.  We overrule CA Partners=s fourth issue.

B.      There Is
Legally and Factually Sufficient Evidence of a AKnowing@ Violation to
Support the Award of Additional Damages Under the DTPA.








CA Partners also challenges the legal and factual
sufficiency of the evidence supporting the trial court=s finding that
Johnson knowingly engaged in conduct that violated the DTPA.  CA Partners
asserts that Spears was never actually evicted from his home, and that none of
his personal property was ever removed from his home.  CA Partners further
asserts that it halted the eviction proceedings to correct the typographical
error in the Deed as soon as it was discovered, and that the second notice of
defaultCin which CA
Partners represented that Spears contracted with and owed a debt to Western
Building and Supply Co.Cwas a mistake.  CA Partners argues that
even if it violated the DTPA, it did not do so Aknowingly,@ and the award of
additional damages was therefore improper.[15] 
Again, we disagree. 

1.       Standard
of Review and Applicable Law

We have already set forth the standard that applies to appellate
review of the trial court=s findings of fact. See Catalina,
881 S.W.2d at 297.  We will sustain a legal sufficiency challenge if there is
no more than a mere scintilla of evidence supporting a finding of fact. See
Formosa Plastics Corp., 960 S.W.2d at 48.  We will sustain a factual
sufficiency challenge only if a finding of fact is so against the great weight
and preponderance of the evidence as to be clearly wrong and unjust. See
Ortiz, 917 S.W.2d at 772.








The DTPA provides for the award of additional damages for
statutory violations that are committed Aknowingly.@ See Tex. Bus. & Com. Code _ 17.50(b)(1).  The
DTPA defines Aknowingly@ as Aactual awareness,
at the time of the act or practice complained of, of the falsity, deception, or
unfairness of the act or practice giving rise to the consumer=s claim
. . . but actual awareness may be inferred where objective
manifestations indicate that a person acted with actual awareness.@ Id. _ 17.45(9).  Actual
awareness does not mean merely that a person knows what he is doing. Daugherty
v. Jacobs, 187 S.W.3d 607, 618 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (citing St. Paul Surplus Lines Ins. Co. v. Dal-Worth
Tank Co., 974 S.W.2d 51, 53B54 (Tex. 1998)).  Rather, it means that a
person knows what he is doing is false, deceptive, or unfair. Id.
(citing St. Paul Surplus Lines Ins. Co., 974 S.W.2d at 54).  Actual
awareness is more than conscious indifference to another=s rights or
welfare. Id. (citing St. Paul Surplus Lines Ins. Co., 974 S.W.2d
at 54).  The burden is on the plaintiff to prove that the defendant acted
knowingly. See Bossier Chrysler-Dodge II, Inc. v. Riley, 221 S.W.3d 749,
758 (Tex. App.CWaco 2007, pet. denied). 

2.       Application
of Law to the Facts

The trial court=s Findings of Fact
related to Johnson=s alleged DTPA violations are as follows:

18.     The Substitute Trustee Deed executed by
Randall B. Johnson purported to sell not only Marshall Spears=s real property, but also all
personal property located on the premises located at 7314 Nightingale Texas
City, Texas 77591.  This would, per force, include items of personal property
that are exempt under __ 42.001 and 42.002, Tex. Prop. Code.

19.     There was no lien on Aall personal property@ or even on any personal property
located at 7314 Nightingale Texas City, Texas 77591.  No such lien is mentioned
in the original deed of trust that Randall B. Johnson claims to be the assignee
of.

20.     Any such lien would have been void under __ 42.001 and 42.002, Tex. Prop.
Code.  Randall B. Johnson is charged, as a matter of law, with knowledge of the
exemptions granted by such statutes.

21.     By purporting to convey the personal
property located on the premises at 7314 Nightingale Texas City, Texas 77591,
Randall B. Johnson claimed that the agreement conferred or involved rights,
remedies or obligations that it did not have or involve or that are prohibited
by law.  This was a violation of _ 17.46(b)(12), Tex. Bus. &
Com. Code.








22.     By the Trustee=s Deed, Randall B. Johnson represented that the
nonpayment of the debt would result, and did result in the sale of property that
could not be lawfully sold.  This was a violation of 15 U.S.C. _ 1692e(4) and _ 392.304(a)(8), Tex. Fin. Code.

31.     Acting through his attorneys, Randall B.
Johnson demanded that Marshall Spears pay $14,760.05.  That letter
misrepresented the character, legal status, and amount of the debt.

32.     Also acting through his attorneys, Randall
B. Johnson also demanded Marshall Spears pay $15,013.04 on a debt on which
Marshall Spears had no liability.  That letter misrepresented the character,
legal status, and amount of the debt.

33.     The actions of Randall B. Johnson were not
the result of any bona fide error.

34.     The actions of Randall B. Johnson were
committed knowingly.

36.     Randall Johnson=s violations of the Texas Finance
Code are also violations of the Texas Deceptive Trade Practices Act.

37.     As Randall
Johnson=s conduct was
committed knowingly, Marshall Spears should recover judgment against Randall B.
Johnson, individually and doing business as CA Partners, for the sum of
$55,000.00 as additional damages under the Texas Deceptive Trade Practices
Act.  This sum represents twice the mental anguish damages of $25,000 plus
twice the attorney=s fees of $2,500 paid in connection with
the appeal of the forcible entry and detainer judgment.

CA
Partners specifically challenges findings 18B22 and 32B36, arguing that
any representations in the Trustee=s Deed relating to
Spears=s personal
property were not made knowingly, and the notice of default that stated that
Spears owed a debt for which he had no liability was a mistake.

However, the following evidence supported the above
findings:

$                  
Johnson is Ain the business of buying, selling
and collecting bad debt,@ and has been in the business for
thirteen years.

$                  
The business of
CA Partners is A[n]ot a hundred percent, but
largely@ collecting debts that are assigned
to it, and that other than buying, selling, and collecting debts, CA Partners
is not engaged in any other business.








$                  
Johnson was the
substitute trustee, he executed the Trustee=s Deed, which purported to convey the personal property,
and conducted the foreclosure sale of Spears=s real property.

$                  
In the Trustee=s Deed, Johnson represented that
the Deed created a lien on any and all of Spears=s personal property located at 7314 Nightingale,
Texas City, TX, 77591, and that Spears= interest in this personal property was now conveyed to CA
Partners through the foreclosure sale.

$                  
Contrary to
Johnson=s representation in the Trustee=s Deed, the Deed did not create a
lien on any of Spears=s personal property.

$                  
Johnson sent a
second notice of default to Spears representing that Spears owed $15.013.04 to
CA Partners as a result of nonpayment of a debt that originated from the AContract for Labor and Materials
and Trust Deed@ Spears executed with Western
Building and Supply Co.

$                  
Spears
never executed a AContract for Labor and Materials and Trust
Deed@ with Western
Building and Supply Co., and Johnson knew this, yet a letter was sent to Spears
demanding payment for this debt.








Thus, the record contains some evidence that Johnson
knowingly engaged in conduct that violated the DTPA.  Johnson=s own testimony
establishes that he was engaged in the business of debt collection for thirteen
years, and that, with respect to Spears=s debt, he (1)
represented in the Trustee=s Deed that the Deed created a lien on
Spears=s personal
property (which it did not); and (2) represented that Spears owed a debt that
originated from a contract executed with Western Building and Supply Co. (which
he did not).  A reasonable fact finder could infer from this testimony that
Johnson made these representations with Aactual awareness@ that these
representations were false. See Tex.
Bus. & Com. Code _ 17.45(9) (Aactual awareness
may be inferred where objective manifestations indicate that a person acted
with actual awareness@); see also Bossier
Chrysler-Dodge II, 221 S.W.3d at 758 (finding evidence legally sufficient
to support jury=s finding that defendant knowingly engaged
in conduct that violated DTPA; evidence indicated that defendant Aengaged in
countless transactions of a similar nature on a daily basis,@ and supported
inference that defendant made misrepresentations to plaintiff and failed to
disclose the falsity of the representations with Aactual awareness@ of their
falsity).  Therefore, the evidence is legally sufficient to support the trial
court=s finding that
Johnson knowingly engaged in conduct that violated the DTPA.

With respect to factual sufficiency, the following evidence
contradicts that trial court=s findings:

$                  
Johnson
testified that he did not realize that the Trustee=s Deed contained representations
regarding Spears=s personal property when he filed
the document, Aand if we did it was a mistake.@

$                  
Johnson
testified that the second notice of default had two different amounts in it,
that the amount of $14,633.91 stated in the body of the notice Ais not accurate@ and Aincorrect,@ that the
information at the top of the notice is Aaccurate,@ and that the
notice Amistakenly@ recites that the
contract was with Western Building and Supply Co. instead of Lyle Construction
Co.

While this evidence does contradict the trial court=s findings, we
must defer to the fact finder=s resolution of this disputed issue. See
Pulley v. Milberger, 198 S.W.3d 418, 426B27 (Tex. App.CDallas 2006, pet.
denied) (stating that, in a factual sufficiency review, an appellate court will
not pass on the credibility of the witnesses or substitute its judgment for the
trier of fact); see also Precision Homes, Inc. v. Cooper, 671 S.W.2d
924, 929 (Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.) (stating
that it is the sole province of the trier of fact to judge the credibility and
weight to be given the testimony and to resolve conflicts in the testimony of
the witnesses).  We cannot say that the trial court=s finding that
Johnson knowingly engaged in conduct that violated the DTPA is so against the
great weight and preponderance of the evidence as to be manifestly unjust.








Furthermore, CA Partners=s contentions have
no bearing on the question of whether Johnson knowingly engaged in conduct that
violated the DTPA.  The fact that Spears was never actually evicted from his
home or that none of his personal property was ever removed from his home is
irrelevant to the question of whether Johnson knowingly made the
representations at issue in either the Trustee=s Deed or in the
notices of default.  And, even if we were to accept CA Partners=s argument that it
halted the eviction proceedings to correct the typographical error in the Deed
as soon as it was discovered, this does not demonstrate that the
representations in the Trustee=s Deed or in the notices of default were
not made knowingly.  Moreover, regardless of whether Johnson Aadmitted@ or testified that
the second notice of defaultCin which CA Partners represented that
Spears contracted with and owed a debt to Western Building and Supply Co.Cwas a mistake, as
the trier of fact, the trial court was free to disbelieve any or all of Johnson=s testimony. See
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986); see also Tagle
v. Galvan, 155 S.W.3d 510, 518 (Tex. App.CSan Antonio 2004,
no pet.).

Thus, there is legally and factually sufficient evidence
supporting the trial court=s finding that Johnson knowingly engaged
in conduct that violated the DTPA.  We next examine the sufficiency of the
evidence supporting the trial court=s award of mental
anguish damages to Spears.

C.      The
Evidence Is Legally and Factually Sufficient to Support the Award of Mental
Anguish Damages Under the DTPA.

CA Partners further contends that the trial court erred in
awarding mental anguish damages to Spears.  CA Partners challenges Finding of
Fact 29, wherein the trial court found that Johnson=s actions in
foreclosing on Spears=s real and personal property and in
bringing the forcible entry and detainer action were calculated to and did
cause Spears to suffer mental anguish, and that this mental anguish continued
until the forcible entry and detainer were dismissed on appeal.  CA Partners
asserts that Spears=s testimonyCthe only evidence
of mental anguish damages he presented at trialCshowed Amere worry,
anxiety, vexation, embarrassment, or anger,@ and did nothing
but cite the existence of Amere emotions.@  CA Partners
argues that the evidence is therefore both legally and factually insufficient
to support the award of mental anguish damages under the DTPA.








Because we find that the evidence presented at trial
addressed the nature, duration, and severity of Spears=s mental anguish,
thus establishing a substantial disruption in his daily routine, we conclude
that the evidence is legally and factually sufficient to support the award of
mental anguish damages under the DTPA. See Parkway Co. v. Woodruff, 901
S.W.2d 434, 444 (Tex. 1995).

1.       Standard of
Review and Applicable Law

As explained above, we will sustain a legal sufficiency
challenge if there is no more than a mere scintilla of evidence supporting a
finding of fact. See Formosa Plastics Corp., 960 S.W.2d at 48.  We will
sustain a factual sufficiency challenge only if a finding of fact is so against
the great weight and preponderance of the evidence as to be clearly wrong and
unjust. See Ortiz, 917 S.W.2d at 772.

A plaintiff who establishes that the defendant knowingly
engaged in conduct that violated the DTPA may recover damages for mental
anguish. See Tex. Bus. & Com.
Code _ 17.50(b)(1).  However, to obtain mental anguish damages
under the DTPA, the plaintiff must either (1) introduce direct evidence of the
nature, duration, and severity of his mental anguish, establishing a
substantial disruption in his daily routine; or (2) present evidence of a high
degree of mental pain and distress that is more than mere worry, anxiety,
vexation, embarrassment, or anger. See Parkway, 901 S.W.2d at 444.  Not
only must there be evidence of the existence of compensable mental anguish,
there must also be some evidence to justify the amount awarded. Saenz v.
Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).








Texas courts, including this Court, have held that evidence
of a claimant=s physical and emotional state, coupled with his/her
inability to eat and sleep, constitutes legally and factually sufficient
evidence to support the award of mental anguish damages. See Stevens v. Nat=l Educ. Ctrs.,
Inc.,
990 S.W.2d 374, 379 (Tex. App.CHouston [14th Dist.] 1999), pet. denied,
11 S.W.3d 185 (Tex. 2000) (determining evidence that plaintiff felt Adevastated@ and depressed,
did not eat for a long time, lost weight, and became Avery moody@ was legally and
factually sufficient to support award of mental anguish damages); Tex.
Farmers Ins. Co. v. Cameron, 24 S.W.3d 386, 395B97 (Tex. App.CDallas 2000, pet.
denied) (concluding evidence that plaintiff, among other things, felt Adevastated@ going to work,
lost her appetite, could not sleep, and took prescription medication for
insomnia was legally and factually sufficient to support award of mental
anguish damages); Burleson State Bank v. Plunkett, 27 S.W.3d 605, 617B18 (Tex. App.CWaco 2000, pet.
denied) (determining evidence that plaintiff was unable to sleep and suffered
from, among other things, vomiting, diarrhea, and depression supported finding
of A>high degree of
mental pain and distress,= which caused a serious disruption in his
daily routine,@ and was legally and factually sufficient to support
award of mental anguish damages); Norwest Mortgage, Inc. v. Salinas, 999
S.W.2d 846, 862B63 (Tex. App.CCorpus Christi
1999, pet. denied) (concluding evidence that plaintiff was unable to sleep,
suffered severe stomach cramps, was often unable to eat, and felt Adesperate@ supported finding
that plaintiff suffered A>a high degree of
mental pain and distress= that caused a serious disruption in [her]
daily routine@ and was legally and factually sufficient to support
award of mental anguish damages).  Such evidence can take the form of the
claimant=s own testimony. Parkway,
901 S.W.2d at 444.

We have been instructed to Aclosely scrutinize@ awards of mental
anguish damages. Gunn Infiniti v. O=Byrne, 996 S.W.2d 854,
860 (Tex. 1999).  With this in mind, we examine the parties= arguments.

2.       Application
of Law to the Facts

CA Partners asserts that Spears=s trial testimony
only showed Amere worry, anxiety, vexation, embarrassment, or
anger,@ and argues that
this evidence is insufficient under the standard adopted by the Texas Supreme
Court in Parkway to support the award of mental anguish damages.  This
argument is without merit.  At trial, Spears testified that

$                  
He is a
64-year-old retired longshoreman, with a high school education.

$                  
He had worked
as a longshoreman from 1968 until he retired in 2004.








$                  
He was
devastated when the justice of the peace court granted the forcible entry and
detainer suit.[16]

$                  
He was
devastated because he was faced with the realization that he didn=t have anyplace to go, that he and
his son were Agoing to be put out,@ and that he only had seven days to
figure out how to fight the eviction.

$                  
He was unable
to sleep and was Anot hardly@ able to eat.

$                  
He was unable
to sleep and eat because he was thinking about where he was going to live, that
he had grown up wishing he had a home of his own, that he had worked for Aall these years@ to have a home of his own, and
suddenly his home was taken by someone he didn=t know and from whom he had never borrowed money.

$                  
Thinking these
thoughts was devastating to him.

$                  
His thoughts
continuedCat a minimumCuntil the forcible entry and
detainer was reversed on appeal.

$                                                                                          
He was forced
to hire a lawyer to appeal the forcible entry and detainer suit to county
court, and paid $2,500 in attorney=s fees in connection with that appeal.  

$                  
He
was seeking mental anguish damages Afor harassment and
the grief and everything [he was] going through.@

Contrary to CA Partners=s contention,
Spears=s trial testimony
is sufficient under Parkway to support the award of mental anguish
damages under the DTPA.  His testimony constitutes Adirect evidence of
the nature, duration, and severity of [his] mental anguish,@ and established Aa substantial
disruption in [his] daily routine.@ See Parkway,
901 S.W.2d at 444.  Spears=s testimony did more than cite the
existence of Amere emotions,@ as CA Partners
contends.  We find that the evidence is legally sufficient to support the award
of mental anguish damages under the DTPA. See Stevens, 990 S.W.2d at
379; Tex. Farmers Ins. Co., 24 S.W.3d at 395B97; Burleson
State Bank, 27 S.W.3d at 617B18; Norwest
Mortgage, Inc., 999 S.W.2d at 862B63.








Furthermore, we find that the above evidence is factually
sufficient to support the trial court=s award of mental
anguish damages.  CA Partners has not presented evidence contradicting Spears=s testimony
regarding his mental anguish.  Absent such evidence, Spears=s testimony is
factually sufficient to support the award of mental anguish damages. See
Stevens, 990 S.W.2d at 379.

Therefore, the evidence is legally and factually sufficient
to support an award of mental anguish damages under the DTPA.  We overrule CA
Partners=s sixth issue.

D.      The Trial
Court Did Not Err in Issuing Permanent Injunctions Against Johnson.

Finally, CA Partners contends that the trial court erred in
permanently enjoining  Johnson from (1) engaging in debt collection until he
posts a surety bond with the Secretary of State; and (2) using the name ACA Partners@ as an assumed
name in debt collection in the State of Texas.  CA Partners asserts that Spears
never requested permanent injunctions in any of his pleadings, nor did he
allege that Johnson violated section 392.101(a) of the Texas Finance Code by
not posting a surety bond with the Secretary of State.  CA Partners further
asserts that Johnson is not a Athird-party debt collector@ as that term is
used in section 392.101(a), that he is not required to post a surety bond, and
that he has committed no statutory violation.  CA Partners argues that the
permanent injunctions issued against Johnson are therefore improper.

1.       Standard
of Review and Applicable Law

We review the trial court=s grant of
permanent injunctions for an abuse of discretion. See Jim Rutherford Invs.,
Inc. v. Terramar Beach Cmty. Ass=n, 25 S.W.3d 845,
848 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  A trial
court abuses its discretion when it acts arbitrarily and unreasonably, or when
it misapplies the law to the established facts of the case. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985); State
v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).








Section 392.101 of the Texas Finance Code prohibits a
third-party debt collector from engaging in debt collection unless he obtains a
$10,000 surety bond and files a copy of the bond with the Secretary of State. See
Tex. Fin. Code _ 392.101(a)(1),
(c).  The definition of Athird-party debt collector@ in the Texas
Finance Code tracks the definition of Adebt collector@ in the Fair Debt
Collection Practices Act. See Tex.
Fin. Code _ 392.001(7) (A>Third-party debt
collector= means a debt collector, as defined by 15 U.S.C. _ 1692a(6)@).  The Fair Debt
Collection Practices Act provides,

The term Adebt collector@ means any person
who uses any instrumentality of interstate commerce or the mails in any
business the principal purpose of which is the collection of any debts, or who
regularly collects or attempts to collect, directly or indirectly, debts owed
or due or asserted to be owed or due another.

15
U.S.C. _ 1692a(6). 
Section 1692a(6) further narrows the meaning of Adebt collector@ by excluding Aany person
collecting or attempting to collect any debt owed or due or asserted to be owed
or due another to the extent such activity . . . concerns a debt which was not
in default at the time it was obtained by such person.@ See id. _
1692a(6)(F)(iii).  Therefore, Aa debt collector does not include the
consumer=s creditors, a
mortgage servicing company, or an assignee of a debt, as long as the debt was
not in default at the time it was assigned.@ Perry v.
Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).  Thus, if a debt is
in default at the time the assignee acquires his interest in the debt, he is a Athird-party debt
collector@ within the contemplation of the section 392.101(a) of
the Texas Finance Code.  See Tex.
Fin. Code __ 392.001(7) & 392.101(a);15 U.S.C. _ 1692a(6)(F)(iii).

2.       Application
of Law to the Facts

The following Findings of Fact relate to the two permanent
injunctions issued by the trial court and show that Johnson is a third-party
debt collector:

7.       Randall B. Johnson collects or attempts to
collect debts owed or due that were in default at the time they were obtained
by him.

8.       Randall B. Johnson=s only business is in collection of
such debts.








10.     Randall B. Johnson is a third-party debt
collector as defined by _ 392.001,  Texas Finance
Code and by the Fair Debt Collection Practices Act, 15 U.S.C. _ 1692a(6).

11.     Randall B. Johnson has not posted a security
bond with the Secretary of State as required by the Texas Finance Code, _ 392.101.  He was, therefore,
prohibited by law from engaging in debt collection in this state.

14.     C.A. Partners is not a partnershipCit is an assumed name of Randall B.
Johnson.

15.     Because of the sworn testimony, the sworn
documents, and the documents filed in the Real Property Records of Galveston
County, Randall B. Johnson is estopped to deny that he has collected debts
under other than his true name or true business name.

43.     Randall B.
Johnson should be permanently enjoined from engaging in debt collection unless
and until he shall have obtained a surety bond and posted same with the
Secretary of State in accordance with and as required by Tex. Fin. Code _ 392.101 and Randall
B. Johnson should be permanently enjoined from using the name CA Partners, as
an assumed name, in debt collection in this state.

CA
Partners only challenges Findings of Fact 10, 11, 14, and 15, asserting that it
is not a Athird-party debt collector@ because it Awas collecting its
own debt obtained by assignment,@ and that Athere is no
evidence that [it] collected debts other than under its true business name of
CA Partners.@

However, the trial court foundCand CA Partners
does not disputeCthat AJohnson collects
or attempts to collect debts owed or due that were in default at the time they
were obtained by him.@  Thus, Johnson is a Athird-party debt
collector@ for the purposes of section 392.101(a) of the Texas
Finance Code. See Tex. Fin. Code __ 392.001(7)
& 392.101(a); 15 U.S.C. _ 1692a(6)(F)(iii); see also Perry,
756 F.2d at 1208.[17]








We turn next to CA Partners=s statement, made
in passing, that Spears did not plead for an injunction and therefore should
not have been granted an injunction.  CA Partners=s entire argument
on this point is the following:  ANo request for
permanent injunction was pleaded by Spears and there was no pleading alleging
that [CA Partners] violated this statute by not posting a surety bond.@  CA Partners
cited no case law and no rules of civil procedure in support of this
statement.  The sole focus of CA Partners=s issue regarding
the trial court=s issuance of permanent injunctions is
Johnson=s status as a Athird-party debt
collector@ under the Texas Finance Code, and not whether Spears
was required to plead for the permanent injunctions that were granted by the
trial court.  Apart from this single assertion, CA Partners=s brief wholly
fails to address any pleading requirements related to the issuance of permanent
injunctions.  We will not develop CA Partners=s arguments for
it.

Therefore, because CA Partners=s brief contains
no Aclear and concise
argument@ for its
contention that the trial court erred in issuing unpleaded permanent
injunctions against Johnson,  nor does it contain any citation to authority for
this proposition, we hold that CA Partners has waived this argument on appeal. Tex. R. App. P. 38.1(e), (h); see
CoTemp, Inc. v. Houston W. Corp., 222 S.W.3d 487, 495 (Tex. App.CHouston [14th
Dist.] 2007, no pet.) (holding that appellant waived issue on appeal by failing
to provide argument or authority to support its assertions).  








Moreover, as Spears correctly notes, CA Partners failed to
challenge the permanent injunction enjoining Johnson from using the name ACA Partners@ as an assumed
name while engaged in debt collection in the state of Texas.  While CA Partners
does allege that Athere is no evidence that Appellant
collected debts other than under its true business name of CA Partners,@ it is unclear
whether CA Partners even challenges the issuance of this particular permanent
injunction.  CA Partners=s brief does not contain any argument
regarding what constitutes Athe true name@ of an individual
or Athe true business
name@ of a sole
proprietorship, nor does it explain how the trial court might have abused its
discretion in issuing this permanent injunction.  Furthermore, CA Partners=s brief does not
contain any citations to authority supporting what we could construe as a
challenge to this permanent injunction.  Accordingly, we hold that CA Partners
has waived any challenge to this permanent injunction on appeal. Tex. R. App. P. 38.1(e), (h); see
CoTemp, Inc., 222 S.W.3d at 495.

We therefore overrule CA Partners=s fifth issue.

III.      The
Trial Court Erred in its Award of Attorney=s Fees to Spears.

In its seventh issue, CA Partners contends that the trial
court erred in its award of attorney=s fees to Spears[18]
because (1) Spears failed to segregate between time incurred on fee-recoverable
and non-fee-recoverable matters; and (2) the amount of appellate attorney=s fees awarded was
Aextravagant@ and excessive.[19] 
CA Partners asserts that attorney=s fees are not
recoverable on all the causes of actions pleaded by Spears in his original
counterclaim, and argues that because these causes of action are not Ainextricably
intertwined,@ the trial court erred in awarding the total amount
requested by Spears for attorney=s fees.

Because we agree with CA Partners that Spears was required
to segregate fees in this case, we reverse that portion of the judgment
awarding attorney=s fees to Spears, and remand the cause to
the trial court for a new trial on attorney=s fees. See
A.G. Edwards & Sons, Inc. v. Beyer, 235 S.W.3d 704, 710 (Tex. 2007)
(citing Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex.
2006)) (reversing and remanding cause for new trial on attorney=s fees).








A.      Standard
of Review and Applicable Law

As Chapa makes clear, the need to segregate attorney=s fees is a
question of law, while the extent to which certain claims can or cannot be
segregated is a mixed question of law and fact. See Chapa, 212 S.W.3d at
312B13.

Generally, a party seeking attorney=s fees must
segregate fees incurred in connection with a claim that allows their recovery
from fees incurred in connection with claims for which no such recovery is
allowed. See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.,
245 S.W.3d 488, 506 (Tex. App.CHouston [14th Dist.] 2007, pet. filed)
(citing Chapa, 212 S.W.3d at 313B14).  This is
because trial courts do not have inherent authority to require a losing party
to pay the prevailing party=s attorney=s fees. Chapa,
212 S.W.3d at 311.  They may only do so under authority of a contract or
statute. See id.

Texas courts recognize an exception to this general rule. See
id.  When discrete legal services advance both recoverable claims and
unrecoverable claims, attorneys are not required to segregate fees to recover
the total amount covering all claims. See id. at 313.  In this
situation, the claims are said to be Aintertwined,@ and the mere fact
that attorney=s fees are incurred in advancing both recoverable and
unrecoverable claims does not render those fees unrecoverable.[20]
See id. at 313B14.








However, if any attorney=s fees relate
solely to a claim for which attorney=s fees are
unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Id.
at 313.  But, even when fee segregation is required, attorneys are not required
to keep separate records documenting the exact amount of time pleading one
claim versus another. See id. at 314.  Rather, the evidence of the
amount of recoverable attorney=s fees is sufficiently segregated if, for
example, the attorney testifies that a given percentage of the drafting time
would have been necessary even if the claim for which attorney=s fees are not
recoverable had not been asserted. 7979 Airport Garage, 245 S.W.3d at
506.  The party seeking to recover attorney=s fees carries the
burden of demonstrating that fee segregation is not required. See Hong Kong
Dev., Inc. v. Nguyen, 229 S.W.3d 415, 455 (Tex. App.CHouston [1st
Dist.] 2007, no pet.).

With this in mind, we examine the parties= arguments.

B.      Application
of Law to the Facts

In this case, the trial court=s attorney=s fee award was
based on evidence of unsegregated fees.  Spears argues that fee segregation is
not required because (1) his claim Ato remove cloud
upon title@ is Aactually just a request for a declaratory
judgment that [CA Partners] had no lien upon [Spears=s] property@; (2) he presented
no evidence, did no discovery, and sought no recovery on his tortious
interference claim; and (3) the causes of action pleaded in his counterclaim
are Ainextricably
intertwined@ with his defense to CA Partners=s suit for
reformation of the Deed and judicial foreclosure.  We disagree with Spears that
fee segregation is not required in this case, and address each of his arguments
in turn.

Spears=s initial argumentCthat we should
construe his claim Ato remove cloud upon title@ as a mere request
for a declaratory judgmentCis without merit.  Even liberally
construing Spears=s pleadings, we conclude that (1) Spears=s request for
declaratory judgment was actually pleaded earlier in his counterclaim; and (2)
Spears=s claim Ato remove cloud
upon title@ is a tort claim for damages rather than a request for
declaratory judgment.

The relevant paragraphs of Spears=s counterclaim are
as follows:

 








Third Cause of Action B Declaratory Judgment

14.     Spears sues CAP for a declaratory judgment
that the Deed of Trust did not provide a lien on his personal property located
on his property and that is not affixed to or a fixture of the property. 
Spears also sues for a declaratory judgment that the debt and lien are barred
by the statute of limitations.  Spears sues for reasonable attorney=s fee[s] for having to bring this
declaratory judgment action.

Fourth Cause of Action B Slander of Title B Suit to Remove Cloud on Title

15.     By
claiming that it should have a lien on Spears=s property, CAP
has slandered the title of Spears and has created a cloud on the title to his
property.  Spears sues CAP to remove same.  Spears sues for damages, and
reasonable attorney=s fees for having to bring this action.

From
the foregoing, it is immediately apparent that Spears counterclaimed for a
declaratory judgment that CA Partners had no lien upon Spears=s property, but
did so in the paragraph preceding his ASuit to Remove
Cloud on Title@ claim.  The express language used in paragraph 14
demonstrates that Spears obviously knew how to request a declaratory judgment,
and the absence of similar language in paragraph 15 indicates that Spears
sought a different form of relief through the latter cause of action.

Furthermore, in terms of the relief requested, Spears
expressly sought to recover damages for his ASlander of Title B Suit to Remove
Cloud on Title@ claim.  Damages are not recoverable in a suit to
remove cloud on title. See Pampell Interests, Inc. v. Wolle, 797 S.W.2d
392, 395 (Tex. App.CAustin 1990, no writ) (explaining that a
suit to remove cloud on title Ais an equitable action for which damages
are not available@).  However, damages are recoverable in a
suit for slander of title. See id. (explaining that a suit for Aslander of title@ is a tort action
for which damages are recoverable).  Therefore, because Spears expressly sought
damages for his ASlander of Title B Suit to Remove
Cloud on Title@ claim, and because Spears failed to request
declaratory reliefCas he had done elsewhere in his pleadingsCwe will not
construe his tort claim as a request for a declaratory judgment.








Next, Spears=s argument that he
presented no evidence, did no discovery, and sought no recovery on his tortious
interference claim has no basis in the record.  Quite the contrary, the record
suggests that Spears did not abandon this claim before trial commenced.  In
fact, when Spears=s attorney was cross-examined regarding
fee segregation, she stated that the five causes of action pleaded in Spears=s counterclaim Aare all so
intertwined that a recovery of attorney=s fees under any
of those causes of action is not required to be segregated.@  Significantly,
she never testified that no legal work was performed in connection with Spears=s tortious
interference claim, or that he sought no recovery on this claim.  Nor did she
explain Spears=s failure to amend his original counterclaim to delete
this cause of action.  And, while her testimony arguably advanced Spears=s position that
fee segregation was not required, Spears=s attorney failed
to articulate how the legal services that she performed advanced both
recoverable and unrecoverable claims, as Chapa requires. See Chapa,
212 S.W.3d at 313B14.

Finally, with respect to Spears=s argument that
the five causes of action pleaded in his counterclaim are Ainextricably
intertwined,@ we note that the Texas Supreme Court has expressly
held that A[i]ntertwined facts do not make tort fees
recoverable.@ See id. at 313 (emphasis added).  Rather, the
determination focuses solely on whether the legal work performed pertains
solely to claims for which attorney=s fees are not
recoverable. 7979 Airport Garage, 245 S.W.3d at 509.  In making this
determination, fact finders do not examine the work product as a whole, but
parse the work into component tasks. Id. (citing Chapa, 212
S.W.3d at 313).








Defense of CA Partners=s suit to reform
the Deed and for judicial foreclosure did not require Spears to prevail on his
counterclaims for tortious interference or slander of title. Cf. Chapa,
212 S.W.3d at 314 (Ato prevail on a contract claim a party
must overcome any and all affirmative defenses (such as limitations, res
judicata, or prior material breach), and the opposing party who raises them
should not be allowed to suggest to the jury that overcoming those defenses was
unnecessary@).  Nor did Spears=s request for
declaratory judgment require him to prevail on these two counterclaims.  In
fact, Spears successfully defended CA Partners=s declaratory
judgment action and prevailed on his own request for a declaratory judgment
without prevailing on either his tortious interference or slander of title
claims.

Furthermore, while development of some of the facts may
have been the same among Spears=s counterclaims, and while the evidence
presented may have pertained to all the claims and counterclaims in the case,
it is immediately apparent that each of his counterclaims required, at a
minimum, drafting separate portions of his pleading.  Each counterclaim also
required separate legal research, and possibly separate discovery requests as
well.  The attorney=s fees relating solely to the prosecution
of Spears=s tortious interference and slander of title claims
and hence, to drafting this language, are not recoverable. See 7979 Airport
Garage, 245 S.W.3d at 509.  Although Spears=s original
counterclaim contains less than a dozen sentences related solely to these
claims, A>unrecoverable fees
[are not] rendered recoverable merely because they are nominal . . . .=@ Id. at 510
(quoting Chapa, 212 S.W.3d at 313).

Because it is beyond dispute that some of his attorney=s fees are related
solely to the work performed on claims for tortious interference and slander of
title, Spears was required to segregate fees. See id. at 313B14.  However,
Spears did not forfeit his right to recover attorney=s fees by failing
to segregate them. See id. at 314; 7979 Airport Garage, 245
S.W.3d at 510.  The evidence he presented regarding the total amount of
attorney=s fees he incurred
is some evidence of what the segregated amount should be. See Chapa, 212
S.W.3d at 314; 7979 Airport Garage, 245 S.W.3d at 510.  Therefore, we
sustain CA Partners=s seventh issue, sever and reverse that
portion of the judgment awarding attorney=s fees to Spears,
and remand the cause to the trial court for a new trial on Spears=s recoverable
attorney=s fees.[21]

 

 








IV.      The Trial
Court Did Not Err in Allowing Citifinancial to File a Counterclaim During
Trial.

In its final issue, CA Partners contends that the trial
court erred in allowing Citifinancial to file a counterclaim in the middle of
trial because (1) the issue of Citifinancial=s lien position
was not tried by consent; and (2) there was no claim for affirmative relief
asserted against Citifinancial.  CA Partners argues that Citifinancial
presented no evidence in support of its counterclaim during trial, and
therefore the issue of Citifinancial=s lien priority Awas not tried by
consent, and in fact, was not tried at all.@  CA Partners
further asserts that Citifinancial was only made a party to the declaratory
judgment suit because it had a lien on the property at issue.  And, despite
paragraph 4.7 in its first amended petitionCwhich states AReformation of
this lien is superior to any other lien on the Property@CCA Partners argues
that the issue of priority of liens was not discussed in its pleadings, and
that Athere was no request
for affirmative relief against Citifinancial.@  CA Partners
contends that the trial court therefore erred in granting Citifinancial a
judgment and award of attorney=s fees on its counterclaim.

We agree with Citifinancial that the filing of its
counterclaim during trial could not have operated as a surprise to CA
Partners.  We hold that the trial court did not abuse its discretion in
granting Citifinancial leave to file a counterclaim during trial, and overrule
CA Partners=s final issue.[22]

A.      Standard
of Review and Applicable Law

Rule 63 of the Texas Rules of Civil Procedure governs the
trial court=s grant of leave to file a counterclaim during trial. See
Tex. R. Civ. P. 63.  Rule 63
states that








Parties may amend their pleadings,
respond to pleadings on file of other parties, file suggestions of death and
make representative parties, and file such other pleas as they may desire by
filing such pleas with the clerk at such time as not to operate as a surprise
to the opposite party; provided, that any pleadings, responses, or pleas
offered for filing within seven days of the date of trial or thereafter, or
after such time as may be ordered by the judge under Rule 166, shall be filed
only after leave of the judge is obtained, which leave shall be granted by
the judge unless there is a showing that such filing will operate as a surprise
to the opposite party.

Id. (emphasis
added).  Therefore, under Rule 63, the trial court is required to grant leave
to file a counterclaim unless the opposing party demonstrates that the filing
of the counterclaim will operate as a surprise to that party. See id.

We review the trial court=s grant of leave
to file a counterclaim during trial for an abuse of discretion. See Hardin
v. Hardin, 597 S.W.2d 347, 349B50 (Tex. 1980).  A
trial court abuses its discretion in granting leave to file a counterclaim
during trial when the opposing party presents evidence of surprise. See Tex. R. Civ. P. 63; Hardin, 597
S.W.2d at 349B50.  We now examine the parties= arguments.

B.      Application
of Law to the Facts

Not only did the trial court not abuse its discretion in
granting Citifinancial leave to file its counterclaim, it would have been an
abuse of discretion if the trial court had refused Citifinancial=s request for
leave to file its counterclaim.  Under Rule 63, the trial court has no
discretion to deny a party leave to file a counterclaim unless the opposing
party presents evidence of surprise. See Tex. R. Civ. P. 63; Hardin, 597 S.W.2d at 349B50.  Here, CA
Partners failed to meet its burden.

On the issue of surprise, CA Partners alleges that its
pleadings neither discuss the issue of Citifinancial=s lien priority, nor
assert any request for affirmative relief against Citifinancial.  However, CA
Partner=s first amended
petitionCits live pleading
in the trial courtCdemonstrates otherwise:

$                  
Paragraph 3.3
references Citifinancial=s October 17, 2002 loan to Spears
and its Asecond lien@ on Spears=s real property.  This paragraph
further states that Citifinancial extended this loan on October 14, 2004.








$                  
Paragraph 4.7
of CA Partners=s first amended petition states
that AReformation of this lien is
superior to any other lien on the Property.@

$                  
Paragraph
4.9 contains CA Partners=s request for judicial foreclosure of
Spears=s real property
subject to the reformed Deed.

In asserting that Citifinancial held a Asecond lien@ on Spears=s real property,
and stating that its own lien Ais superior to any other lien@ on that property,
CA Partners cannot here contend that the filing of Citifinancial=s counterclaimCin which it
requested a declaratory judgment that its lien was superior to any held by CA
PartnersCoperated as a
surprise.  Citifinancial=s counterclaim directly related to CA
Partner=s petition for
declaratory relief, and CA Partners cannot reasonably claim Asurprise@ when its suit
directly attacked Citifinancial=s lien priority. See Richards v. Am.
Nat=l Prop. & Cas. Co., 195 S.W.3d 758,
762 (Tex. App.CBeaumont 2006, no pet) (concluding that, for the
purposes of Texas Rule of Civil Procedure 252, a plaintiff could not reasonably
claim Asurprise@ when the
defendant=s counterclaim and affirmative defenses Aall directly
related to [the plaintiff=s] underlying petition for declaratory
relief,@ and the plaintiff=s suit directly
attacked the defendant=s right to receive payment under its
lien).  Therefore, the trial court did not abuse its discretion in granting
Citifinancial leave to file its counterclaim.  We overrule CA Partners=s final issue.

Conclusion

We reverse that portion of the
trial court=s judgment awarding attorney=s fees to Spears, sever that
portion of the judgment, and remand the cause to the trial court for a
determination of Spears=s recoverable attorney=s fees in a manner consistent with
this opinion.  We affirm the trial court=s judgment in all other respects.[23]

 

 

Wanda McKee Fowler

Justice

Judgment rendered
and Memorandum Opinion filed August 21, 2008.

Panel consists of
Justices Fowler, Seymore, and Guzman.









[1]  The second notice of default and demand for payment
represented that Spears=s debt Aoriginated
from the Contract for Labor and Materials and Trust Deed [Spears] executed with
Western Building and Supply Company,@
and that A[t]he amount owed on this debt is $14, 633.91 . . . .@  However, on cross- and redirect examination, Johnson
testified that Spears never executed a Contract for Labor and Materials and
Trust Deed with Western Building and Supply Co.  Johnson further testified that
paragraph 2 of the second notice of default mistakenly recites that Spears
contracted with Western Building and Supply Co., instead of Lyle Construction
Co., that the amount of debt listed in that paragraph is not accurate, and that
the accurate amount of Spears=s debt is
listed at the top of the notice.





[2]  Apparently, the justice of the peace court granted
CA Partners=s petition for forcible entry and detainer.  Although
the order granting that petition is absent from the record on appeal, Spears
testified in the proceedings below that he was present in court when the
forcible entry and detainer lawsuit was tried, that the judge made a decision
and ruled against him, and that he appealed that decision to the county court. 
A copy of CA Partners=s AOriginal
Petition For Forcible Detainer@ was admitted
at trial as Defendant=s Exhibit 2, and is included in the record on appeal.





[3]  Citifinancial was included as a defendant in the
present suit because it holds a lien on Spears=s real property.  According to Citifinancial=s trial exhibits, on October 17, 2002, Spears executed
a deed of trust with Citifinancial to secure a loan in the amount of
$55,253.16.  That deed of trust correctly described Spears=s real property as ALot
85,@ located at 7314 Nightingale, in Texas City.  Then, on
October 14, 2004, Spears executed a second deed of trust with Citifinancial, to
secure a loan in the amount of $58,632.17.  The second deed of trust also
correctly described Spears=s real
property, and was recorded in the Galveston County clerk=s office.  According to Citifinancial=s brief, the 2004 loan was a refinance of Spears=s 2002 loan.





[4]  Specifically, Spears asserted that (1) under section
16.035 of the Civil Practices and Remedies Code, a four-year statute of
limitations applied to suits on a Anote
secured by real estate@; (2) under CPRC section 16.051, the residual
four-year statute of limitations applied to suits to reform a deed; and (3)
under section 3.118 of the Business and Commerce Code, a six-year statute of
limitations applied to suits on a Anote
payable at a certain time.@  Because the
deadline for CA Partners to file suit was January 1, 2004 under the four-year
statutes of limitation and January 1, 2006 under the six-year statute of
limitations, Spears argued that he was Aentitled
to summary judgment under all of the three methods of calculation of the
statute of limitations.@





[5]  CA Partners also timely filed a formal bill of exceptions, to which it
attached one cashier=s check and seven money orders.  The cashier=s check and money orders purportedly represent eight
payments made by Spears on the Note from April 2003 to May 2004.  These are the
same supporting documents with which CA Partners requested under Rule 166a(f)
of the Texas Rules of Civil Procedure to supplement Johnson=s summary judgment affidavit.





[6]  In its brief, CA Partners indicates that Johnson is
also an appellant, although, in its words, A[he
is] not a party to this action.@  However, the
record indicates that CA Partners is a sole proprietorship, and Johnson is its
sole owner.  As we explain in our discussion of CA Partners=s fifth issue, Texas law regards the sole proprietor and the sole
proprietorship as one and the same person. See CU Lloyd=s of Tex. v. Hatfield, 126 S.W.3d 679, 684 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied) (citing Ideal Lease Serv., Inc. v. Amoco Prod. Co., 662 S.W.2d
951, 952 (Tex. 1983)).  Accordingly, we
refer to CA Partners and Johnson collectively as ACA Partners,@ unless otherwise specified.





[7]  CA Partners also contends that the trial court erred
in granting Spears=s motion for partial summary judgment because Johnson=s Aimproperly-struck@ affidavit created a fact issue on limitations. 
However, in light of our holding that the trial court did not err in striking
Johnson=s affidavit, we need not address this argument.





[8]  Section 16.035(e) provides:

 

If a series of notes or obligations or a note or
obligation payable in installments is secured by a real property lien, the
four-year limitations period does not begin to run until the maturity date of
the last note, obligation, or installment.

 

Tex. Civ. Prac. & Rem.
Code _ 16.035(e).





[9]  The general rule is that separate documents executed
at the same time, for the same purpose, and in the course of the same
transaction are to be considered as one instrument, and are to be read and
construed together. Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981). 
Here, the Note and the Deed were both executed on December 4, 1989, for the
purpose of securing a loan for remodeling work to be done to Spears=s home.  Thus, we construe the Note and the Deed
together as a single instrument. See id.; see also The Cadle Co.v.
Butler, 951 S.W.2d 901, 908B09 (Tex. App.CCorpus Christi 1997, no writ) (construing promissory
note and deed of trust as a single instrument to determine date of maturity;
both documents Awere executed on the same date by identical parties,@ Aidentif[ied]
the same subject matter,@ and were therefore Anot separable@).





[10]  Section 16.035(b) provides, AA sale of real property under a power of sale in a
mortgage or deed of trust that creates a real property lien must be made not
later than four years after the day the cause of action accrues.@ Tex. Civ.
Prac. & Rem. Code _ 16.035(b).





[11]  An Aassumed name@ is a word or phrase by which a person may be made known to the public, and is not a
legal entity. Indus. Accident Bd. v. Tex. Workmen=s Comp. Assigned Risk Pool, 490 S.W.2d 956, 959 (Tex. Civ. App.CAustin 1973, no writ).





[12]  Spears argues that Johnson is not a party to this
appeal because he did not file a notice of appeal, and urges us to affirm the
judgment as to Johnson individually.  However, because the law regards the sole
proprietor and the sole proprietorship as one and the same person, Spears=s argument is without merit.





[13]  Section 1692e(4) provides that it is a violation of
the Act if the debt collector represents that nonpayment of any debt will
result in the unlawful sale of any property of any person. See 15 U.S.C.
_ 1692e(4).  Sections 42.001 and 42.002 of the
Texas Property Code provide that certain personal property of the debtor is
exempt from seizure. See Tex.
Prop. Code __ 42.001 & 42.002.  In Finding of Fact 20, the
trial court found that any lien on Spears=s
personal property would have been void under sections 42.001 and 42.002.  In
Finding of Fact 22, the trial court found that Johnson violated the state and
federal acts by representing in the Trustee=s
Deed that Spears=s nonpayment would result in the sale of personal
property that could not be lawfully sold.





[14] Section 392.304(a)(8) provides that, in debt
collection, a debt collector may not use a fraudulent, deceptive, or misleading
representation that misrepresents the character, extent, or amount of a
consumer debt. See Tex. Fin. Code
_ 392.304(a)(8).





[15]  In a footnote, CA Partners further contends that the
trial court erred in Atrebling@
the $25,000 mental anguish damages because (1) the trial court only found a Aknowing@
violation; (2) the DTPA states that only economic damages are trebled
for Aknowing@
violations; and (3) mental anguish damages are not Aeconomic damages.@ 
However, the DTPA allows for the trebling of mental anguish damages for a Aknowing@
violation when Athe claimant is granted the right to bring a cause of
action under [the DTPA] by another law . . . .@ See Tex. Bus. & Com.
Code _ 17.50(h) (explaining that, if another law grants the
right to bring a cause of action under the DTPA, claimants may recover actual
damages Awithout regard to whether the conduct of the defendant
was committed intentionally,@ and
authorizing the trier of fact to award a total of not more than three times
actual damages A[i]n applying Subsection (b)(1) to an award of damages
under this subsection@).  The Texas Finance Code provides that A[a] violation of this chapter is actionable under [the
DTPA].@ See Tex.
Fin. Code _ 392.404(a).  Thus, because CA Partners=s actions constituted a violation of the Texas Finance
Code, the trial court was warranted in doubling Spears=s mental anguish damages for a mere Aknowing@
violation of the DTPA. See id.





[16]  Spears actually testified that he was Ademonstrated@ as
a result of the adverse ruling in the forcible entry and detainer suit. 
However, on direct examination, Spears later clarified that by Ademonstrated,@ he
meant Adevastated.@





[17]  Johnson does not claim on appeal that the trial
court has no general authority to issue the injunction; he claims that the
court had no authority to enjoin him because he is not a third-party debt
collector.





[18]   On appeal, CA Partners failed to challenge the attorney=s fees awarded to Citifinancial,
and therefore waived any such challenge. 
In its briefing on this issue, CA Partners only challenges the award of
attorney=s fees to Spears.  While CA Partners does mention the
award of attorney=s fees to Citifinancial in its eighth issue, CA
Partners focuses its argument there on the trial court=s alleged error in granting Citifinancial leave to
file a counterclaim during trial, and not whether fee segregation was required
or whether Citifinancial=s fee award was excessive.  Therefore, we construe CA
Partners=s issue as a challenge only to the trial court=s award of attorney=s
fees to Spears.





[19]   Because we remand the cause to the trial court for
a new trial on attorney=s fees, we do not reach the argument that the fees
were excessive.





[20]  The former version of this exception applied when two or more claims
were Adependent upon the same set of
facts or circumstances, and thus Aintertwined to the point of being inseparable.@ See Chapa, 212 S.W.3d at
311; see also Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11B12 (Tex. 1991).  In that situation,
the claims were said to be Ainextricably intertwined,@ and fee segregation was not required. See Chapa,
212 S.W.3d at 311; see also Bencon Mgmt. & Gen. Contracting, Inc. v.
Boyer, Inc., 178 S.W.3d 198, 208 (Tex. App.CHouston [14th Dist.] 2005, no pet.) (referencing Ainextricably intertwined@ exception to the attorney fee
segregation requirement).  However, in Chapa, the Texas Supreme Court
explained that common or Aintertwined@ facts do not make all fees
incurred recoverable. See 212 S.W.3d at 313B14.  Rather, fees
are recoverableCand segregation is not requiredCif the legal work performed Aadvances both a recoverable and
unrecoverable claim.@ See id.  This is the focus
of the current version of the exception. See id.; see also 7979
Airport Garage, 245 S.W.3d at 506.





[21]  As we have already explained, as a result of our
disposition of this issue, we do not reach the question of whether Spears=s appellate attorney=s fee award is excessive.





[22]  In light of our resolution of this issue, we do not
address Citifinancial=s contention that the issue of its lien priority was
tried by consent.





[23]  Due to our resolution of CA Partners=s issues on appeal, we need not address Spears=s cross-point claiming error in the trial court=s admission of testimony on CA Partners=s attorney=s
fees.